IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RONALD D. GONZALEZ,     § | |
|     *Plaintiff,*     § | |
|     § | CIVIL ACTION: 5:15-cv-986 RCL |
| v.     § | |
|     § | |
| UNITED PARCEL SERVICE,     § | |
|     *Defendant.*     § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

i

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND & PROCEDURAL HISTORY ............................................... 2

III. ARGUMENT & AUTHORITIES ........................................................................................ 3

    A. *McDonnell Douglas* Burden-Shifting Analysis Governs Claims of Discrimination and Retaliation. ................................................................................ 3

    B. Plaintiff's Claims are Barred, as a Matter of Law, by Judicial Estoppel. .................... 4

    C. Plaintiff Fails to Establish Claims of Disability Discrimination or Retaliation. .......... 6

        1. Plaintiff Cannot Establish *Prima Facie* Discrimination or Retaliation Claims ... 6
        2. UPS Articulates Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Each of its Decisions, and There is No Evidence of Pretext ........... 9

    D. Plaintiff Fails to Establish Failure to Accommodate Claim ...................................... 11

        1. Effects of Plaintiff's Restrictions Could not be Ameliorated ........................... 12
        2. Plaintiff's Requested Accommodation Not "Reasonable," as a Matter of Law .................................................................................................. 12

    E. Defendant Should be Awarded its Reasonable and Necessary Attorney's Fees ...... 13

IV. CONCLUSION .................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Cases**

*Abraham v. Sw. Bell Yellow Pages, Inc.,* 3 F.3d 438 (5th Cir. 1993) .......................................... 13

*Amsel v. Tex. Water Development Bd.,* 464 F. App'x 395 (5th Cir. 2012) ................................... 8

*Cavada v. McHugh,* 589 F. App'x 717 (5th Cir. 2014) ............................................................... 12

*Christianburg Garment Co. v. EEOC,* 434 U.S. 412 (1978) ....................................................... 13

*Cooper v. Dallas Police Assoc.,* 278 F. App'x 318 (5th Cir. 2008) ............................................... 7

*EEOC v. LHC Group, Inc.,* 773 F.3d 688 (5th Cir. 2014) .............................................................. 7

*Feist v. La. Dept. of Justice,* 730 F.3d 450 (5th Cir. 2013) ........................................................... 3

*Flanner v. Chase Invest. Servs. Corp.,* 600 F. App'x 914 (5th Cir. 2015) ............................... 8, 10

*Franco v. City of Corpus Christi,* 254 F.3d 1081 (5th Cir. 2001) ................................................. 3

*GP Plastics Corp. v. Interboro Pkg. Corp.,* 108 F. App'x 832 (5th Cir. 2004) ............................. 5

*Harrelson v. Lufkin Indus., Inc.,* 614 F. App'x 761 (5th Cir. 2015) ............................................... 9

*Harris v. Dallas County Hosp. Dist.,* Cause No.,
   2016 WL 2914847 (N.D. Tex. May 19, 2016) ......................................................................... 13

*Hennis v. Alter Trading Corp.,* 341 F. App'x 991 (5th Cir. 2009) ............................................ 3, 4

*Ladson v. U.S.P.S.,* Cause No., No. 05-1643, 2007 WL 1850422 (S.D. Tex. June 26, 2007) ..... 13

*Lambus v. City of Jackson,* 54 F. App'x 414 (5th Cir. Nov. 13, 2002) .......................................... 7

*McClaren v. Morrison Mgmt. Specialists, Inc.,* 420 F.3d 457 (5th Cir. 2005) .......................... 5, 6

*Payne v. Univ. of So. Miss.,* 643 F. App'x 409 (5th Cir. 2016) ..................................................... 8

*Pedroza v. Autozone, Inc.,* 536 F. Supp.2d 679 (5th Cir. 2008) .................................................... 9

*Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327 (5th Cir. 2005) ............................................ 3

*Rogers v. Bromac Title Servs., LLC,* 755 F.3d 347 (5th Cir. 2014) ............................................... 3

*Royal v. CCC&R Tres Arboles, LLC,* 736 F.3d 396 (5th Cir. 2013) .............................................. 3

*Seidel v. New Caney Indep. Sch. Dist.,*
   No. 15-581, 2015 WL 6549895 (S.D. Tex. Sept. 18, 2015) ....................................................... 7

*Silva v. City of Hidalgo,* 575 F. App'x 419 (5th Cir. 2014) .......................................................... 12

*Vaughn v. Woodforest Bank,* 665 F.3d 632 (5th Cir. 2011)............................................................ 11

*Wade v. Brennan,* 647 F. App'x 412 (5th Cir. 2016).................................................................... 12

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RONALD D. GONZALEZ, § | |
| *Plaintiff,* § | |
| § | CIVIL ACTION: 5:15-cv-986 RCL |
| v. § | |
| § | |
| UNITED PARCEL SERVICE, § | |
| *Defendant.* § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant files its Motion for Summary Judgment and, in support thereof, respectfully shows the following:

### I.   INTRODUCTION

Plaintiff Ronald Gonzalez formerly held an Inside Sales position with Defendant United Parcel Service, Inc. (Ohio) ("UPS"). Gonzalez's own admissions and the undisputed evidence show that his former position required him to perform a host of cognitive and analytical tasks, such as strategizing, analyzing data and information, and negotiating contracts on behalf of the company. Gonzalez requested and was approved for a medical leave of absence beginning in April 2013. His claims in this lawsuit are premised upon the untenable notion that, when he requested reinstatement to employment in February 2014, he and his physicians believed he was capable of performing his role for UPS, with or without reasonable accommodation.

However, the undisputed evidence also shows that from April 2013 through present, Gonzalez and his physicians have repeatedly concluded he is unable to perform any meaningful work, whether for UPS or any other company. In particular, since taking a medical leave of absence, Gonzalez has applied for and continues to receive Social Security Disability Insurance

1

benefits, received more than two years' worth of private Long-Term Disability benefits from Aetna, and received a disability homestead exemption from the Bexar County Appraisal District. In each of these instances, Gonzalez and his physicians have stipulated that Plaintiff is unable to work, without any qualification. Most recently, Plaintiff filed suit against Aetna in this very Court, seeking a continuation of his Long-Term Disability benefits, based on factual allegations that are patently contradictory with his claims made in the instant lawsuit.

In the end, Plaintiff wishes to have it both ways and, in the process, contradicts himself at every turn. Plaintiff has received many years' worth of government- and private-disability insurance payments, based on his professed inability to work. Yet, Plaintiff now sues UPS, alleging he is both qualified and ready to work, seeking back pay damages for the ***same time period*** he received disability payments. Plaintiff's medical and employment records, sworn testimony, and repeated admissions make clear that there is no explanation or justification for these contradictions and inconsistencies. Instead, Plaintiff's claims are barred by the doctrine of judicial estoppel and his inability to satisfy the *McDonnell Douglas* burden-shifting analysis. Each of Plaintiff's claims should be dismissed with prejudice, and Defendant should be awarded its reasonable and necessary attorney's fees pursuant to the *Christianburg Garment* doctrine.

## II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

Pursuant to Western District of Texas Local Rule CV-7(d)(1), Defendant UPS attaches its Factual Background and Procedural History as Exhibit A to this Motion.

### III.     ARGUMENT & AUTHORITIES

### A.     McDonnell Douglas *Burden-Shifting Analysis Governs Claims of Discrimination and Retaliation.*[1]

Summary judgment is proper if Defendant "shows that there is no genuine dispute as to any material fact . . . ." *Rogers v. Bromac Title Servs., LLC,* 755 F.3d 347, 350 (5th Cir. 2014). "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In evaluating a motion for summary judgment, the court "construes all facts and inferences in the light most favorable to the nonmoving party," but "summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id.*

Under the *McDonnell Douglas* analytical framework, a *prima facie* claim for disability discrimination and retaliation requires Gonzalez establish that he (1) is a member of a protected class or engaged in protected activity, (2) was subjected to an adverse employment action, (3) was otherwise qualified for his position, and (4) was treated differently from others similarly situated or that there is a "causal link" between his protected status (disability) or his protected activity and that adverse employment action. *Franco v. City of Corpus Christi,* 254 F.3d 1081, *5 (5th Cir. 2001) (disability discrimination); *Royal v. CCC&R Tres Arboles, LLC,* 736 F.3d 396, 400 (5th Cir. 2013) (Title VII retaliation); *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 332 (FMLA retaliation). If Plaintiff successfully satisfies this *prima facie* burden, then the burden shifts to UPS to articulate a legitimate, non-discriminatory reason for the challenged decisions. *Hennis v. Alter Trading Corp.*, 341 F. App'x 991, 993-94 (5th Cir. 2009). Once UPS meets this burden of

---

[1] Plaintiff's putative failure to accommodate claim is not itself subject to the *McDonnell-Douglas* analytical framework, though Plaintiff bears the burden of proving each element of his claim, including that (i) he is a qualified individual with a disability, (ii) the disability and its limitations were "known" by UPS, and (iii) UPS failed to make "reasonable accommodations" for such known limitations. *Feist v. La. Dept. of Justice,* 730 F.3d 450, 452 (5th Cir. 2013).

3

production, "the presumption of discrimination created by plaintiff's *prima facie* case disappears." *Hennis,* 341 F. App'x at 993. At that point, the burden shifts back to Gonzalez to present substantial and specific evidence establishing that UPS's reason was pretext for discrimination or retaliation. *Id*.

### B.   Plaintiff's Claims are Barred, as a Matter of Law, by Judicial Estoppel.

Plaintiff has repeatedly indicated to the Social Security Administration, Aetna, Bexar County Appraisal District, and indeed even to **this very court** that he is completely unable to work in any capacity. On March 15, 2014—as UPS was considering his request for accommodation—Gonzalez submitted his handwritten "Function Report—Adult" to the Social Security Administration, telling the federal government that:

> My dominant right hand burns all that time . . . . Repetitive motions of either or both extremities cause more pain. Walking, standing, or leaving my left arm in one position for approximately 15 minutes increases pain. I must reposition the arm to reduce pain. ***My current work requires 99% PC and phone work, sitting or standing in one place, and repetitive upper extremity use***. This causes my current pain levels to increase and limits my range of motion of each extremity and emotionally impacts my ability to focus and concentrate. In my current role I have over 1,500 accounts to manage and grow the business plan year over year.

Ex. 5, Function Report[2] (emphasis added). Gonzalez concludes, telling the SSA with absolutely no ambiguity whatsoever, "***I do not have the physical and mental ability to perform this role***." *Id.* (emphasis added).

Later in 2013, Gonzalez authorized Dr. Scott Sledge to complete a Physician's Statement in support of Plaintiff's application for a Texas Disability Homestead Exemption. Ex. 1, Pl. Dep. 222:2-19. This form asks Dr. Sledge to indicate whether Gonzalez "is ***unable to engage in any substantial gainful activity*** . . . ." Ex. 29, BCAD Doc. (emphasis added). With Gonzalez's

---

[2] In Section 20 of the Function Report, Gonzalez also notes that his condition affects his memory, concentration, ability to complete tasks, understanding, ability to follow instructions, and so forth. *Id.*

4

approval, Dr. Sledge indicated that Gonzalez was in fact "unable to engage in any substantial gainful activity," and Gonzalez's application for a disability homestead exemption was approved. *Id.*; Ex. 1, Pl. Dep. 220:22-25, 222:2-19.  Gonzalez admits that he has this disability homestead exemption to this very day, and that he has never notified the BCAD that he is able to "engage in any substantial gainful activity."  Ex. 1, Pl. Dep. 222:20-224:12.

Finally, on March 30, 2017, Gonzalez filed suit against Aetna Life Insurance Company, repeatedly telling this Court that it was his medical condition, not actions or decisions of UPS, which prevented him from returning to work with Defendant.  *See* Ex. 28, Aetna Lawsuit at ¶¶ 4 (alleging Plaintiff's medical conditions "prevented him from returning to work for UPS"), 5 (noting Gonzalez "was not able to return to work," prompting him to apply for disability benefits and that Gonzalez was "not able to return to work due to illness or injury"), 6 (alleging that as of April 22, 2013, Gonzalez "was no longer able to work for UPS"), 11 (Gonzalez is "unable to perform any full-time work").

In sum, Plaintiff has alleged in at least three different forums that ever since 2014 he has been completely unable to work.  These admissions reveal that Plaintiff was and remains, therefore, not "qualified" for *any* position with UPS and judicially estop Plaintiff from establishing a *prima facie* claim of disability discrimination, retaliation, or failure to accommodate.  *See, e.g., McClaren v. Morrison Mgmt. Specialists, Inc.,* 420 F.3d 457, 463 (5th Cir. 2005) (judicial estoppel based on inconsistent claims made in seeking SSDI benefits); *GP Plastics Corp. v. Interboro Pkg. Corp.,* 108 F. App'x 832, 835 (5th Cir. 2004) (applying judicial estoppel to prevent "a party from asserting a position in a legal proceeding that is contrary" to positions taken in separate proceedings).  Plaintiff can only avoid this affirmative defense and escape summary judgment by explaining the "apparent inconsistency" of his representations in this lawsuit and those made to

the SSA, BCAD, and this Court. *McClaren,* 420 F.3d at 463. If Plaintiff is unable "to explain the inconsistency between his qualification and disability, or if the explanation is insufficient, then his ADA claim is judicially estopped by his earlier statements regarding disability." *Id.*

Gonzalez, however, cannot explain these inconsistencies. In fact, the admissions of Plaintiff and his physicians demonstrate that he is no more able to work today than he was at the time of his May 1, 2014 termination. *See* Ex. 19, Nov. 18, 2014 Report; Ex. 7, Apr. 2015 Aetna Work History; Ex. 20, Aug. 10, 2015 Report; Ex. 21, May 11, 2016 Report; Ex. 22, Dec. 2016 Disability Questionnaire; Ex. 23, Feb. 7, 2017 Disability Questionnaire; Ex. 24, Activities of Daily Living Form; Ex. 28, Aetna Lawsuit, Ex. 1, Pl. Dep. 182:18-183:14. Plaintiff is bound to and cannot explain the inconsistency between his prior representations and his claims in this lawsuit. He is not "qualified" for employment with UPS, as a matter of law, justifying summary judgment.

### C.   *Plaintiff Fails to Establish Claims of Disability Discrimination or Retaliation.*

Plaintiff alleges he suffered disability discrimination, Title VII retaliation, and FMLA retaliation when he was separated from employment on May 1, 2014. Ex. 1, Pl. Dep. 24:14-25:4. However, he cannot establish even a *prima facie* claim, as he was not qualified for any position with UPS and did not engage in protected activity prior to his termination. Furthermore, UPS has articulated legitimate, non-discriminatory and non-retaliatory reasons for its decision, and Plaintiff has not the slightest evidence of pretext, requiring summary judgment.

#### 1.   **Plaintiff Cannot Establish *Prima Facie* Discrimination or Retaliation Claims**

##### a.   **Plaintiff Not Qualified for EAR Position**

Each of Plaintiff's claims must be dismissed, as he was not qualified for either UPS's EAR or IRS positions. Each of Plaintiff's claims require that he demonstrate he is a "qualified individual," or one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." *EEOC v. LHC Group, Inc.,* 773 F.3d 688, 696 (5th Cir.

6

2014) (discrimination); *Seidel v. New Caney Indep. Sch. Dist.,* No. 15-581, 2015 WL 6549895, at *2 (S.D. Tex. Sept. 18, 2015) (failure to accommodate); *Lambus v. City of Jackson,* 54 F. App'x 414, *3 (5th Cir. 2002) (retaliation).

Plaintiff's own testimony demonstrates he cannot perform either the EAR or ISR positions, with or without accommodation, as both positions require him to engage in a host of complex, analytical, cognitive functions related to sales strategy, planning, and customer service activities. Ex. 4, Feb. 20, 2015 Ltr. to EEOC at 2; Ex. 5, SSA Function Report; Ex. 6, Oct. 2013 Aetna Work History Report; Ex. 1, Pl. Dep. 45:23-50:15, 52:17-54:11, 58:16-25, 65:4-67:5, 68:6-19, 69:21-24, 132:18-24, 297:11-144. Plaintiff, however, admitted to UPS's HR Manager Lenroe Hawthorne, the SSA, Aetna, this Court, and his physicians that his medical condition and numerous medications, including daily use of ketamine and opioid narcotics, restricted his concentration, decision-making, focus, information retention, and other cognitive faculties. Ex. 11, Feb. 19, 2014 Physician Statement; Ex. 6, Oct. 2013 Aetna Work History Report; Ex. 5, Function Report—Adult; Ex. 19, Nov. 18, 2014 Report; Ex. 7, Apr. 2015 Aetna Work History; Ex. 24, Activities of Daily Living Form. These restrictions began before Plaintiff requested reinstatement and accommodation in February 2014 and continue to the present day.

Because Plaintiff is unable to perform the essential functions of an EAR or ISR position, with or without accommodation, he is not 'qualified' as a matter of law. *Cooper v. Dallas Police Assoc.,* 278 F. App'x 318, 321 (5th Cir. 2008) (plaintiff "admits that she cannot perform the essential functions of her job . . . which is one of the requirements of being a 'qualified individual with a disability'").

### b. No Title VII-Protected Activity Prior to Termination

Plaintiff admits his charge of discrimination, filed May 22, 2014, was the first instance in which he complained of discrimination or retaliation in relationship to his employment with UPS:

7

> Q.   Is that charge of discrimination the first time that you complained of discrimination or retaliation by UPS?
> A.   Yes.

Ex. 1, Pl. Dep. 226:6-9.  However, Plaintiff also admits that his Title VII retaliation claim is based on his May 1, 2014 termination.  It is undisputed that Plaintiff did not engage in any activity protected by Title VII until after suffering the allegedly adverse action, requiring summary judgment on this claim.  *Payne v. Univ. of So. Miss.,* 643 F. App'x 409, 411 (5th Cir. 2016) (granting summary judgment, where adverse action occurred "before [employee] engaged in protected activity").

### c.   No Causal Connection for FMLA Retaliation Claim

Plaintiff's final FMLA leave began on April 22, 2013.  Ex. 1, Pl. Dep. 96:1-12; Ex. 31, LOA Usage. Plaintiff therefore exhausted his FMLA leave twelve weeks later on July 15, 2013. 29 U.S.C. § 2612(a)(1).  Though Plaintiff remained out on leave after July 15th, that absence was no longer protected under the FMLA.  As such, by the time Plaintiff was terminated on May 1, 2014, more than *nine months* had passed since Plaintiff's leave was protected by the FMLA.

With this factual background, Plaintiff is unable to establish a causal connection between his use of FMLA leave and termination of employment.  First, Plaintiff admits that none of his former management made critical comments regarding his use of leave.  Ex. 1, Pl. Dep. 77:22-78:3, 78:18-79:1, 92:25-96:12.  Plaintiff also admits he had taken leave at least three times previously, without suffering any adverse decisions.  *Id.*  Moreover, the nine-month period between the expiration of Plaintiff's FMLA leave and his termination from employment "is not, by itself, enough to show a causal connection based upon temporal proximity alone."  *Amsel v. Tex. Water Development Bd.*, 464 F. App'x 395, 401-402 (5th Cir. 2012) (granting summary judgment, as *two month* gap between use of FMLA and termination could not establish causal connection); *Flanner v. Chase Invest. Servs. Corp.,* 600 F. App'x 914, 921 (5th Cir. 2015) ("[A]

four-month gap in time, standing alone, is insufficient to establish *prima facie* evidence of causation."). Because Plaintiff lacks any direct evidence of causation, and he cannot rely on temporal proximity to meet his burden, he fails to create a *prima facie* case of FMLA retaliation, requiring dismissal of that claim.

### 2. UPS Articulates Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Each of its Decisions, and There is No Evidence of Pretext

Even if the Court determined Plaintiff established *prima facie* discrimination or retaliation claims, summary judgment remains appropriate. UPS has articulated legitimate, non-discriminatory and non-retaliatory reasons for its decision, and Plaintiff lacks evidence of pretext.

#### a. Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

Plaintiff's employment was terminated on May 1, 2014, after he had been out of work for more than a year and unable to return to work. At that time, Plaintiff's documentation indicated that his condition was of an indefinite duration, and there was no indication he was expected to improve to a point where a reasonable accommodation for his restrictions might become available.

As such, UPS's decision to terminate Plaintiff's employment was legitimate, non-discriminatory, and non-retaliatory as a matter of law. *See Pedroza v. Autozone, Inc.,* 536 F. Supp. 2d 679, 700 (5th Cir. 2008) (legitimate and nondiscriminatory to terminate employee who had been absent from work for more than one year and who, at the conclusion of year's absence, was still restricted from performing essential functions of his position); *Harrelson v. Lufkin Indus., Inc.,* 614 F. App'x 761, 764 (5th Cir. 2015) (excessive absences from work legitimate, nondiscriminatory reason for termination).

#### b. Plaintiff Lacks Evidence of Pretext

Because Plaintiff's termination was motivated by a legitimate, non-discriminatory and non-retaliatory reason, Plaintiff can only survive summary judgment with evidence that these

9

justifications are pretext for discrimination. Plaintiff can establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. But a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Flanner v. Chase Invest. Servs. Corp.,* 600 F. App'x 914, 918 (5th Cir. 2015). Plaintiff cannot establish pretext in either manner.

First, Plaintiff lacks admissible evidence of disparate treatment. Plaintiff baldly alleges that two comparators, Douglas Klinger and Rodney Swearingen, received more favorable treatment. Plaintiff specifically alleges these two individuals took time off of work and were allowed to return to their positions, while Plaintiff was separated from employment.[3] Ex. 1, Pl. Dep. 229:22-230:15. Plaintiff, however, cannot prove that either individual's situation is "nearly identical" to his own, and he lacks any competent evidence regarding them whatsoever. Plaintiff admits he lacks any evidence that (i) either individual is disabled, (ii) these individuals requested an accommodation, (iii) they ever used FMLA leave, and (iv) either employee returned with restrictions, or what restrictions they had upon returning to work. *Id.* 229:22-235:13. Plaintiff did not discuss these issues with the alleged comparators, has not reviewed any of their paperwork, and never discussed their circumstances with UPS management. *Id.*

In sum, Plaintiff lacks any admissible evidence regarding his comparators, did not adduce any evidence through discovery, and has little more than bald allegations of disparate treatment. Absent evidence of other similarly situated EARs being returned to work with nearly identical

---

[3] Plaintiff's contention is not just factually baseless but legally untenable, as well. Accepting Plaintiff's speculation as true, Klinger's and Swearingen's circumstances show that UPS does *not* retaliate against employees who take leave, so long as upon they return to work with the capability to perform the functions of their position, with or without accommodation. Because Plaintiff could not perform his position's responsibilities and no accommodation would facilitate such performance, he was separated from employment, whereas his alleged comparators were not.

restrictions, Gonzalez cannot possibly establish pretext via disparate treatment. *Vaughn v. Woodforest Bank,* 665 F.3d 632, 637 (5th Cir. 2011) ("to show pretext by relying on a disparate treatment theory," claimant must show "one employee [was] treated more harshly than other similarly situated] employees" in "nearly identical" situations).

Plaintiff also cannot show that the reasons for UPS's actions were false *and* that discrimination was the real reason. Plaintiff does not dispute that he was out of work for more than a year at the time of his May 1, 2014 termination. Consequently, Plaintiff cannot show that UPS's justifications for his termination were "false." Instead, he merely subjectively disagrees as to whether those justifications warranted separation of employment. Similarly, Plaintiff cannot show that discrimination or retaliation were the "real" reason for his termination, as he acknowledges that no UPS manager, supervisor, or decision-maker ever uttered a single negative comment regarding his use of leave, medical condition, or other protected characteristic. Ex. 1, Pl. Dep. 77:22-79:1.

Simply put, Plaintiff cannot show Defendant's justifications for its decisions are pretextual through a disparate treatment analysis or by proving these reasons were false and discriminatory. Consequently, even if the Court applies the full *McDonnell Douglas* burden-shifting analysis to Plaintiff's discrimination and retaliation claims, summary judgment is appropriate and these claims should be dismissed with prejudice in their entirety.

### D. *Plaintiff Fails to Establish Failure to Accommodate Claim*

Finally, Plaintiff cannot establish a failure to accommodate claim. In particular, the undisputed evidence demonstrates that there was no accommodation that could ameliorate the effects of Plaintiff's cognitive restrictions and still allow him to perform the essential functions of his position with UPS, and Plaintiff's own testimony reveals that the accommodations he sought were not "reasonable," as a matter of law.

### 1. Effects of Plaintiff's Restrictions Could not be Ameliorated

When he requested reinstatement in February 2014, Plaintiff was under a host of physical and cognitive restrictions. Accommodation of Plaintiff's onerous physical restrictions might, by themselves, have been difficult to accomplish. However, given the analytical, deliberative, and strategic tasks of his position, there was simply no accommodation possible for Plaintiff's cognitive restrictions. Where "there is no evidence that a reasonable accommodation was feasible," summary judgment is appropriate. *Silva v. City of Hidalgo,* 575 F. App'x 419, 424 (5th Cir. 2014).

### 2. Plaintiff's Requested Accommodation Not "Reasonable," as a Matter of Law

Plaintiff requested accommodation in the form of a four-hour, part-time work day. This proposed accommodation was not reasonable, as a matter of law. First, Plaintiff acknowledges that UPS has ***no*** part-time Inside Sales positions whatsoever. Ex. 1, Pl. Dep. 146:2-13. As such, Plaintiff's proposed accommodation would have required creation of an entirely new position. Plaintiff "bears the burden of proving that an available position *exists* that he was qualified for and could, with reasonable accommodations, perform." *Cavada v. McHugh,* 589 F. App'x 717, 719 (5th Cir. 2014) (evaluating claims raised under Rehabilitation Act). Any reassignment that "would necessarily require [employer] to create a new position . . . is not a reasonable accommodation." *Wade v. Brennan,* 647 F. App'x 412, 416 (5th Cir. 2016).

More specifically, Plaintiff can identify only two positions or areas in which a part-time position would have even been possible: to work four hours per day either (i) as an EAR or (ii) as an ISR within UPS's "Growth Group." Plaintiff admits, however, he would have been unable to meet the metrics of the EAR position working a part-time schedule. Ex. 1, Pl. Dep. 154:5-156:8. In addition, Plaintiff admits that due to the small number of EARs, his part-time schedule would have imposed a burden and shifted more work onto his coworkers. *Id.* 156:9-157:7. Consequently,

12

a part-time EAR role would itself have not been "reasonable," as a matter of law. *Harris v. Dallas County Hosp. Dist.,* Cause No. 14-3663, 2016 WL 2914847, at *8 n.11 (N.D. Tex. May 19, 2016) (the ADA does not require accommodations that "would result in other employees having to work harder or longer"); *Ladson v. U.S.P.S.,* Cause No. , 2007 WL 1850422, at *7 (S.D. Tex. June 26, 2007) ("a reallocation of the essential functions of an employee's position to other employees is not a reasonable accommodation," and "accommodation of … shifting duties to coworkers is unreasonable").

With regard to a part-time position in UPS's Growth Group, Plaintiff has no knowledge or evidence indicating that there were any vacancies in the Growth Group as of the time he requested accommodation. Ex. 1, Pl. Dep. 147:20-149:20. Instead, Plaintiff admits that the existence of such a vacancy is mere speculation on his part, and that he "do[es]n't have any factual knowledge" as to whether such an ISR position existed at the time in question. *Id.* 149:9-150:1. Accordingly, Plaintiff lacks any evidence there was such a vacancy at the time he requested accommodation, meaning this accommodation was unreasonable, as a matter of law, as well.

### E.     *Defendant Should be Awarded its Reasonable and Necessary Attorney's Fees*

A prevailing defendant may be awarded its fees "where the court finds that the plaintiff's claim was frivolous, unreasonable, groundless, or without foundation, or that the plaintiff continued to litigate after it clearly became obvious." *Abraham v. Sw. Bell Yellow Pages, Inc.,* 3 F.3d 438, *5 (5th Cir. 1993) (citing *Christianburg Garment Co. v. EEOC,* 434 U.S. 412 (1978)). In this case, it is abundantly clear that Plaintiff is and was unable to perform his former position with UPS. This conclusion is reached based upon Plaintiff's own written and sworn admissions, physician's reports, and documents provided to Aetna, the SSA, and other governmental entities reflecting that he has been wholly unable to perform any gainful activity for a nearly four-year period. As Plaintiff has repeatedly admitted he is not "qualified" for a position with UPS, there is

simply no question that Plaintiff's claims are groundless. Nonetheless, Plaintiff continued to litigate this matter well beyond when such evidence and admissions became known and obvious, forcing Defendant to incur substantial attorney's fees in defense of these groundless, frivolous, and unreasonable claims. Accordingly, Defendant should be awarded its reasonable and necessary attorney's fees pursuant to the *Christianburg Garment* doctrine.

## IV. CONCLUSION

UPS prays the Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims with prejudice in their entirety, and for all other relief to which it may be entitled.

Respectfully submitted,

/s/ Shannon B. Schmoyer
Shannon B. Schmoyer
Texas Bar No. 17780250
Christine E. Reinhard
Texas Bar No. 24013389
Justin Barbour
Texas Bar No. 24055142
SCHMOYER REINHARD LLP
17806 IH 10 West
Suite 400
San Antonio, Texas 78257
PH: (210) 447-8033
FX: (210) 447-8036
sschmoyer@sr-llp.com
jbarbour@sr-llp.com

**ATTORNEYS FOR DEFENDANT
UNITED PARCEL SERVICE, INC (OHIO)**

## **CERTIFICATE OF SERVICE**

      On June 23, 2017, a true and correct copy of this document was filed electronically, notice of the filing was served on all counsel by operation of the Court's electronic filing system, and all parties may access this filing through the Court's electronic filing system.

                                              /s/ Shannon B. Schmoyer
                                              Shannon B. Schmoyer